IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARITSA CANCEL, | § § § | |
| *Plaintiff,* | § § | SA-22-CV-00039-ESC |
| vs. | § § § | |
| COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| *Defendant.* | § § | |

**ORDER**

This order concerns Plaintiff's request for review of the administrative denial of her application for a period of disability and disability insurance benefits ("DIB") under Title II and an application for social security income ("SSI") under Title XVI. 42 U.S.C. §§ 405(g), 1383(c)(3). On October 4, 2022, the parties appeared through counsel before the Court for oral argument on the issues raised in this case. After considering Plaintiff's Opening Brief [#10], Defendant's Brief in Support of the Commissioner's Decision [#14], Plaintiff's Reply Brief [#16], the transcript ("Tr.") of the SSA proceedings [#8], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that any purported legal error committed during the proceedings was harmless, and substantial evidence supports the ALJ's mental RFC determination. The Court will therefore affirm the Commissioner's decision.

**I. Jurisdiction**

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#7, #12].

**II. Legal Standards**

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the Administrative Law Judge's ("ALJ") decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015); *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). The Court "scrutinizes the record to determine whether such evidence is presen[t] but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez v. Barnhart*, 415 F.3d 457 (5th Cir. 2005) (citing *Greenspan v. Shalala,* 38 F.3d at 236; *Masterson,* 309 F.3d at 272). Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002) (quoting *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir.1999). While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Garcia v. Berryhill*, 880 F.3d 700, 703–704 (5th Cir. 2018); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) she has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents her from doing any relevant work.  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).  If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability.  *Id.*  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.  Factual Background

Plaintiff Maritsa Cancel filed her applications for DIB and SSI on February 10, 2020, and April 2, 2020, respectively, alleging disability beginning January 25, 2020.  (Tr. 264–66, 284–89.)  At the time of her DIB and SSI applications, Plaintiff was 46 years old with a ninth-grade education and past relevant work as a hospital housekeeper and as a CNA in hospice care.  (Tr. 265, 284, 292.)  The related medical conditions upon which Plaintiff based her initial DIB and SSI applications were:

> Blind or low vision; Type 2 diabetes, Hypertension, Asthma; neuropathy in both hands and feet, in pain all the time; swelling in both legs, shortness of breath, nausea; lack of appetite, insomnia, cramps in legs all the time; nerve pain in both big toes, falls when walking, weak; dizzy, vomiting, drops items like glasses or plate; cannot grip small objects in both hands, startles easily; depressed, cries all the time, worries all the time.

(Tr. 291.) Plaintiff's applications were initially denied on May 26, 2020, and again upon reconsideration on March 25, 2021. (Tr. 159–165, 176–180.)

Following the denial of her claim, Plaintiff requested an administrative hearing. (Tr. 181.) Plaintiff, accompanied by non-attorney representative, Angie Saltsman, on behalf of her appointed attorney, Bradford D. Myler, attended the administrative hearing before ALJ Matthew Allen on September 27, 2021, via teleconference due to the COVID-19 pandemic. (Tr. 5–6; 15, 249.) Plaintiff and vocational expert ("VE") Kay S. Gilreath provided testimony at the hearing. (Tr. 35-56.)

The ALJ issued an unfavorable decision on October 4, 2021. (Tr. 15–28.) The ALJ found that Plaintiff met the insured-status requirements of the SSA through March 31, 2025, and applied the five-step sequential analysis required by SSA regulations. (Tr. 17.) At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 25, 2020, the alleged disability onset date. (Tr. 18.) At step two, the ALJ found Plaintiff to have the severe impairments of bipolar disorder, diabetes, obesity, reactive airway disease, and osteoarthritis of the right knee. (Tr. 18.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled. (Tr. 18–20.) Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in the regulations, with the following limitations given Plaintiff's impairments:

> She can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk 2 hours out of an 8-hour workday; sit 6 hours out of an 8-hour workday; occasionally climb ramps/stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, knee, crouch and crawl. She should avoid concentrated exposure to wetness and vibrations; avoid concentrated exposure to atmospheric conditions such as fumes, odors, dusts, gasses and poor ventilation.

4

> She should have no exposure to hazards such as unprotected heights and dangerous, moving machinery. She can make simple work related decisions (but not detailed or complex work related decisions); perform job tasks independently, appropriately and at a consistent pace in goal oriented work in which job tasks do not have to be completed within a strict time deadline or at a production rate pace. She can have occasional interaction with supervisors, co-workers and the public; and can respond appropriately to occasional routine changes in the work setting.

(Tr. 20.)

At step four, the ALJ determined that Plaintiff is not capable of performing her past relevant work as a hospital housekeeper and certified nursing assistant. (Tr. 26.) Finally, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as document preparer, credit clerk, or similar unskilled sedentary positions. (Tr. 26–27.) Accordingly, the ALJ determined that Plaintiff is not disabled, and therefore not entitled to receive DIB or SSI. (Tr. 27–28.)

Plaintiff requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on November 18, 2021. (Tr. 1–4.) On January 18, 2022, Plaintiff filed the instant case, seeking review of the administrative determination.

## IV.  Analysis

Plaintiff raises one point of error in this appeal: The ALJ's mental RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion of Consultative Examiner Carolynn Cobb, Ph.D. Specifically, Plaintiff argues the ALJ failed to properly articulate the supportability and consistency factors in evaluating Dr. Cobb's medical opinion as required by 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Plaintiff contends this error was not harmless because, had the ALJ properly evaluated Dr. Cobb's opinion, the ALJ might have found Plaintiff disabled.

Plaintiff's arguments are without merit. Even if the ALJ did err in failing to adequately address the supportability and consistency factors in evaluating Dr. Cobb's opinion, Plaintiff has failed to show she was prejudiced by the alleged error. Moreover, the Court finds the ALJ's overall mental RFC determination is supported by substantial evidence. The Court will therefore affirm the finding of the Commissioner that Plaintiff is not disabled.

**A.      Evidence of Record Regarding Plaintiff's Mental Impairments**

The bulk of Plaintiff's medical records pertain to Plaintiff's physical ailments, which are not at issue here. Plaintiff's mental health records are sparse. The only medical opinions of record addressing Plaintiff's mental limitations are a one-time telehealth mental status exam by Consultative Examiner Dr. Cobb, the opinions of the State Agency Psychological Consultant ("SAPC") at the initial and reconsideration levels, and a single exam by Psychiatric Mental Health Nurse Practitioner Margaret Betanco. Plaintiff otherwise does not have a history of mental health treatment aside from an antidepressant prescribed by her primary care doctor.[2] (Tr. 678, 986.)

After one telehealth mental status examination on January 4, 2021, Dr. Cobb diagnosed Plaintiff with "moderate and recurrent major depressive disorder with anxious distress and psychotic features" and concluded that Plaintiff is able to carry out and remember one-step or two-step instructions but has difficulty sustaining attention in order to execute more complex instructions. (Tr. 659–660.) Based on that same examination, Dr. Cobb also concluded that Plaintiff's social functioning is impaired by her condition and that she is "not able to handle work related stress." (Tr. 660.)

---

[2] Plaintiff self-reported one psychiatric hospitalization to Dr. Cobb and Nurse Practitioner Betanco during her exams, but the record itself contains no evidence of any prior hospitalization for psychiatric treatment. (Tr. 25, 658, 983.)

On March 23, 2021, the SAPC Dr. Celine Payne-Gair found Plaintiff to have some moderate mental limitations but no severe limitations. (Tr. 110–114; 138–142.) Dr. Payne-Gair concluded Plaintiff can understand and remember simple instructions; complete simple tasks; maintain attention and concentration for periods of at least two hours; complete a normal workday and workweek without significant psychologically related interruptions and perform at a consistent pace; relate appropriately to peers, coworkers, and supervisors; and adapt to routine changes in the workplace. (Tr. 114, 142.) On September 17, 2021, Nurse Practitioner Betanco diagnosed Plaintiff with bipolar disorder, current episode mixed, severe, with psychotic features; chronic PTSD; insomnia; and generalized anxiety disorder.

The record also contains two Adult Function Reports. In reports dated April 24, 2020, and July 14, 2020, Plaintiff indicated she does not spend time with others and stays in her room all the time because she does not want to see other people, but Plaintiff denied a history of or current problems getting along with authority figures or others. (Tr. 324–26, 342–43.) Plaintiff also self-reported impairments with memory, concentration, and completing tasks. (Tr. 325; 342.)

At the hearing before the ALJ, Plaintiff testified that she stopped working after she was suddenly hospitalized for and diagnosed with diabetes and neuropathy in her legs. (Tr. 44.) Plaintiff also explained that she cannot maintain a full-time job because she cannot think straight, cannot drive, and cannot do the things she used to do prior to her hospitalization for diabetes. (Tr. 50–51.) Plaintiff further testified she gets distracted and forgets what she was thinking about or doing, she does not like to be around other people because they call her crazy sometimes, she does not go out and spends most of her time in bed, and she takes two medications for bipolar disorder that make her feel drowsy. (Tr. 49–50.)

**B.     The ALJ's RFC Determination**

An RFC determination is the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1)–(3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam); *see also Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). An ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris*, 864 F.2d at 336. Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (internal quotation omitted)).

As previously noted, after reviewing Plaintiff's medical records and considering Plaintiff's testimony at the hearing, the ALJ assessed Plaintiff as having the RFC to perform sedentary work with additional restrictions related to her physical and mental limitations. (Tr. 20.) As to Plaintiff's mental limitations, the ALJ imposed additional restrictions limiting the Plaintiff to simple (but not detailed or complex) work-related decisions and to work not requiring strict time deadlines or production-rate pace. (*Id.*) Further, the ALJ imposed additional social restrictions limiting Plaintiff to only occasional interaction with supervisors, coworkers, and the public. (*Id.*)

In reaching his mental RFC determination, the ALJ credited the majority of Dr. Cobb's opinions, rejecting only her conclusions that (1) Plaintiff's social functioning was impaired by her condition and that (2) Plaintiff was not able to handle work-related stress.  (Tr. 22–23.)

**C.    Any error committed by the ALJ in evaluating the consistency of Dr. Cobb's opinion was harmless.**

Because Plaintiff filed her DIB and SSI applications on February 10, 2020, and April 2, 2020, her claims are governed by 20 C.F.R. § 404.1520c, which governs claims filed on or after March 27, 2017.  Under this rule, the ALJ is to consider all medical opinions and prior administrative medical findings using the specific factors outlined in the rule, the most important of which are supportability and consistency.  *Id.* at § 404.1520c(b)(2).  The other factors include the treatment relationship with the claimant and the medical source's area of specialization, as well as "other factors," such as familiarity with other evidence in the claim.  *Id.* at § 404.1520c(c).

The ALJ must articulate how persuasive he finds each of the opinions in the record and explain how he evaluated the supportability and consistency factors.  *Id.* at § 404.1520c(b)(2).  The ALJ may, but is not required to, articulate his consideration of the other factors, unless the ALJ finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same."  *Id.* at § 404.1520c(b)(3).

Plaintiff contends that the ALJ violated Section 404.1520c(b)(2) by failing to perform the required consistency analysis as to Dr. Cobb's opinion.[3]  In evaluating the consistency of a

---

[3] Plaintiff's Opening Brief also argued the ALJ failed to consider the supportability of Dr. Cobb's opinion, but at oral argument, Plaintiff's counsel conceded that the ALJ had conducted a supportability analysis, so the sole issue is whether the ALJ committed reversible error in failing to conduct the required consistency analysis.

9

medical opinion, the ALJ must consider how consistent the opinion is "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The Court disagrees that the ALJ committed reversible error in her treatment of Dr. Cobb's opinion.

To begin with, an opinion that someone cannot "handle work-related stress," to the extent that it means someone cannot handle *any* type of stress in *any* type of job, is tantamount to saying the person cannot work at all. Other district courts faced with similar statements have found that such a statement constitutes a legal conclusion, not a medical opinion, and therefore is not subject to the governing regulations on medical opinion evidence and may be summarily disregarded.[4] The ALJ was not required to evaluate whether Dr. Cobb's opinion that Plaintiff was unable to work at all was consistent with medical records, especially considering the fact that Dr. Cobb did not explain what type of stressors Plaintiff could not handle, nor how she came to that conclusion.

As to Dr. Cobb's opinion that Plaintiff's social functioning was impaired by her condition, the ALJ arguably did not conduct a proper consistency analysis. The only reference

---

[4] *See McKinley v. Kijakazi*, No. 5-20-CV-00703-FB-RBF, 2021 WL 3486346, at *3 (W.D. Tex. Aug. 9, 2021), *report and recommendation adopted*, No. SA-20-CV-703-FB, 2021 WL 8443998 (W.D. Tex. Aug. 24, 2021) *(citing Miller v. Barnhart*, 211 Fed. App'x 303, 305 (5th Cir. 2006) ("An opinion or conclusion that a claimant is disabled or unable to work is a legal conclusion reserved for the Commissioner and, hence, the ALJ doesn't need to 'justify' a decision to give little weight to it.")). *See also, e.g.*, *Whitaker v. Colvin*, No. CV H-15-2204, 2017 WL 896160, at *19 n.296 (S.D. Tex. Feb. 15, 2017), *report and recommendation adopted*, No. CV H-15-2204, 2017 WL 879847 (S.D. Tex. Mar. 6, 2017) ("In the court's opinion, Dr. Alpert's opinion that Plaintiff is incapable of tolerating even low-stress jobs is akin to an opinion that Plaintiff is incapable of work, which is not a medical opinion entitled to deference."); *Wilkins v. Astrue*, No. 4:10-CV-160-A, 2011 WL 2292169, at *6 (N.D. Tex. Mar. 28, 2011), *report and recommendation adopted*, No. 4:10-CV-160-A, 2011 WL 2292142 (N.D. Tex. June 8, 2011) ("Furthermore, the Court is unsure how the ALJ would have incorporated a limitation that Wilkins was unable to handle **any** work stress into the RFC determination as an additional and separate limitation as such a limitation appears to be an opinion that Wilkins is disabled and not able to work. The ALJ, however, is not bound by such an opinion as conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance.") (emphasis in original).

by the ALJ to the consistency of this part of Dr. Cobb's opinion with other medical evidence of record is the ALJ's statement that Dr. Cobb's opinion regarding Plaintiff's impaired social interaction is "inconsistent with the evidence of consistent work activity since Plaintiff's alleged disability onset date as a CNA." (Tr. 23.) Yet Plaintiff's work as a CNA preceded her disability onset date, and the record does not contain any evidence of Plaintiff performing any work after this date. (Tr. 43, 274, 368.) And the Commissioner has conceded that the ALJ's only statement as to consistency was factually incorrect. Thus, the ALJ's only explicit analysis as to consistency is not supported by substantial evidence and has been disregarded by the Court.

Nevertheless, as the Commissioner argues, the ALJ was not required to use the magic word "consistency" to fulfill his obligations under Section 404.1520c(b)(2). A "case will not be remanded simply because the ALJ did not use 'magic words.'" *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (quoting *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)). "Remand is only appropriate 'where there is no indication the ALJ applied the correct standard.'" *Id.* Moreover, as with any error, this Court may not reverse an ALJ's decision unless the claimant shows that the purported error caused her prejudice, i.e., that the error "produced a different outcome in her case." *Id.* at 557. "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

Plaintiff has failed to satisfy this burden. Plaintiff has not demonstrated that any failure to further evaluate the consistency of Dr. Cobb's opinion with the other medical and non-medical evidence of record could have changed the outcome in her case. Stated another way, Plaintiff has not demonstrated that had the ALJ expressly undertaken a more thorough consistency analysis, the ALJ might have reached a different conclusion on the question of her disability.

Importantly, this is not a case where the ALJ completely failed to consider a medical opinion or rejected a medical opinion without any explanation. *Cf. Kneeland v. Berryhill*, 850 F.3d 749, 761–62 (5th Cir. 2017) (vacating and remanding where the ALJ neglected to address or even mention a medical opinion that, if accorded some weight, would surely have changed the RFC determination; this was therefore not harmless error). Here, the ALJ accurately summarized the findings of Dr. Cobb in detail and found the opinion "generally persuasive" aside from her two opinions at issue in this appeal. The ALJ additionally explained why she rejected the portion of Dr. Cobb's opinion regarding Plaintiff's social limitations; she found it vague, unexplained, unsupported by evidence, and based solely on claimant's subjective self-report. (Tr. 23.) Thus, independent of any valid consistency analysis, the ALJ rejected the opinion for clearly stated reasons.

Finally, substantial evidence supports the ALJ's mental RFC as to Plaintiff's interactions with others. The ALJ's limitation of Plaintiff to only occasional interaction with supervisors, co-workers, and the public is supported by the SAPC's and Dr. Cobb's opinion. Although the SAPC found that Plaintiff can relate appropriately to peers, coworkers and supervisors, the SAPC found Plaintiff moderately limited in her ability to interact with the general public. (Tr. 112, 114.) The RFC determination providing for *occasional* interaction with the general public takes into account Dr. Cobb's observation of impaired social functioning and is supported by various medical records subsequently describing Plaintiff as cooperative with appropriate mood and affect. (Tr. 20.) Treating physicians for Plaintiff's physical ailments noted Plaintiff was cooperative with appropriate mood and affect at nearly every appointment, which is consistent with Dr. Cobb's observation that Plaintiff made direct eye contact and was adequately groomed and cooperative with fairly organized thoughts throughout the evaluation, as well as Nurse

Practitioner Betanco's observation that Plaintiff was cooperative and attentive with no gross behavioral abnormalities. (*See e.g.* Tr. Tr. 22, 561–62, 609, 620, 657–60, 821, 859, 985). Further, Dr. Cobb opined that Plaintiff's basic social judgment was average. (Tr. 659.) Moreover, Plaintiff's own responses in her Adult Function Reports indicated she has no problems getting along with others. (Tr. 342.) Taken together, these clinical observations and Plaintiff's own statements provide substantial evidence to find Plaintiff could have *occasional* interactions with the general public.

In summary, even if the ALJ had performed a more explicit consistency analysis, this Court is unpersuaded that the RFC determination would have been different. Plaintiff has therefore failed to satisfy her burden to demonstrate that the alleged error caused her prejudice. The Court thus finds any error flowing from the ALJ's failure to articulate the consideration of the required consistency factor to be harmless. Furthermore, substantial evidence supports the ALJ's RFC determination in this case as to Plaintiff's ability to interact with others.

## V. Conclusion

Based on the foregoing, the Court finds that any legal error committed during these proceedings was harmless and substantial evidence supports the mental RFC determination. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 30th day of March, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE